## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:11-cv-00116-F** |
| **RANGE PRODUCTION COMPANY,** | § | |
| A Delaware Corporation; and | § | |
| **RANGE RESOURCES CORPORATION,** | § | |
| A Delaware Corporation, | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM

---

# TABLE OF CONTENTS

Summary of Argument ................................................................................................1

Background ................................................................................................................4

    A.    Range's Gas Wells ..........................................................................4

    B.    The Private Water Wells ................................................................5

    C.    The Order ....................................................................................5

    D.    EPA's admissions after issuance of the Order ..............................6

    E.    Texas Railroad Commission Proposal for Decision ......................8

    F.    SDWA ........................................................................................8

    G.    Range's Fifth Circuit Petition for Review .....................................9

    H.    Motion to Dismiss .......................................................................10

Brief in Support of Motion .......................................................................................11

    A.    Section 1431 of the Act ...............................................................11

    B.    The Complaint should be dismissed for lack of subject matter
          jurisdiction because enforcement is premature and is not ripe ..............15

        (1)    *Tennessee Valley Auth. v. Whitman* ...........................................16

        (2)    Courts construe similar statutory schemes in a manner
                that avoids the due process concerns addressed by *TVA*
                by requiring EPA to prove its case ..........................................17

        (3)    As pleaded, the Order is not ripe for adjudication and
                the Complaint should be dismissed for lack of jurisdiction ......19

    C.    In the alternative, the Complaint should be dismissed for failure
          to state a claim .............................................................................22

        (1)    Plaintiff fails to plead necessary elements of an enforcement action ........22

        (2)    Plaintiff fails to state a claim that is plausible on its face ...........23

Prayer .......................................................................................................................24

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alaska Dep't of Envtl. Conservation v. E.P.A.,*
  540 U.S. 461, 124 S.Ct. 983 (2004).................................................................................14

*Amoco Oil Co. v. EPA,*
  959 F. Supp. 1318 (D. Colo. 1997)..................................................................................13

*Armco, Inc. v. EPA,*
  124 F. Supp. 2d 474 (N.D. Ohio 1999).............................................................................13

*Ashcroft v. Iqbal,*
  ____ U.S. ____, 129 S.Ct. 1937 (2009)......................................................................23, 24

*Bennett v. Spear,*
  520 U.S. 154 (1997).........................................................................................................15

*Cox v. City of Dallas,*
  256 F.3d 281 & 292 ..........................................................................................................20

*Crawford v. Univ. of North Carolina,*
  440 F. Supp. 1047 (M.D.N.C. 1977) ...............................................................................19

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*
  485 U.S. 568 (1988)..........................................................................................................20

*Employers Ins. of Wausau v. Browner,*
  52 F.3d 656 (7th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996).............................17

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
  762 F.2d 464 (5th Cir. 1985) ...........................................................................................19

*Gonzalez v. United States,*
  284 F.3d 281 (1st Cir. 2002) (holding that attachment of exhibits to a Rule 12(b)(1)
  motion does not convert it into a summary judgment motion)..................................4

*Green v. Forney Eng'g Co.,*
  589 F.2d 243 (5th Cir. 1979) ...........................................................................................15

*Hobbs v. United States,*
  947 F.2d 941, 1991 WL 230202 (4th Cir. 1991) .......................................................13, 15

*Hoffman Group, Inc. v. EPA,*
  902 F.2d 567 (7th Cir.1990) .............................................................................................13

*Kelley v. EPA,*
    15 F.3d 1100 (D.C. Cir. 1994), *cert. denied,* 513 U.S. 1110 (1995) .......................17

*Kinzli v. City of Santa Cruz,*
    818 F.2d 1449 (9th Cir. 1987), *cert. denied,* 108 S. Ct. 775 (1988).........................15

*Ramming v. U.S.,*
    281 F.3d 158 (5th Cir. 2001), *cert. denied,* 536 U.S. 960 (2002)............................10

*Redwing Carriers, Inc. v. Saraland Apartments,*
    94 F.3d 1489 (11th Cir. 1996) ..........................................................................18

*Ross Incineration Servs., Inc. v. Browner,*
    118 F. Supp. 2d 837 (N.D. Ohio 2000)..........................................................13, 14

*Sackett v. EPA,*
    622 F.3d 1139 (9th Cir. 2010, *pet. for cert. filed,* Feb. 23, 2011) ..................13, 14, 18, 20, 22

*Save Barton Creek Ass'n v. Federal Highway Admin.,*
    950 F.2d 1129 (5th Cir.), *cert. denied,* 112 S. Ct. 3029 (1992)..............................15

*Shields v. Norton,*
    289 F.3d 832 (5th Cir.), *cert. denied,* 123 S. Ct. 663 (2002)....................................15

*So. Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement,*
    20 F.3d 1418 (6th Cir.1994) ............................................................................13

*So. Pines Assocs. by Goldmeier v. United States,*
    912 F.2d 713 (4th Cir.1990) .........................................................................13, 14

*Solar Turbines Inc. v. Seif,*
    879 F.2d 1073 (3d Cir. 1989)........................................................................12, 14

*Tennessee Valley Auth. v. Whitman,*
    336 F.3d 1236 (11th Cir. 2003), *cert. denied,* 541 U.S. 1030 (2004).........................14, 16, 17

*Triebwasser & Katz v. American Tel. & Tel. Co.,*
    535 F.2d 1356 (2d Cir. 1976)...........................................................................19

*U.S. v. Valentine,*
    856 F. Supp. 621 (D. Wyo. 1994)......................................................................15

## FEDERAL STATUTES

40 C.F.R. § 19.4 ................................................................................................12

40 C.F.R. § 144.3 .........................................................................................21, 23

33 U.S.C. § 1319.............................................................................................12

42 U.S.C. § 300i(a) ...........................................................................................8, 12, 21, 23

42 U.S.C. § 300i(b) ..............................................................................................10, 12, 13

42 U.S.C. § 300j-7(a)(2) ...................................................................................................9

42 U.S.C. §§ 6934, 6973 ................................................................................................12

42 U.S.C. § 9606(a) ........................................................................................................12

## FEDERAL RULES

FED. R. CIV. P. 12(b)(1) ...........................................................................................1, 3, 4, 10

FED. R. CIV. P. 12(b)(6) ...................................................................................1, 4, 10, 11, 22, 23

## OTHER AUTHORITIES

S. Rep No. 96-172, 96th Cong., 2d Sess., at 5, *reprinted in* 1980 U.S. Code
Cong. & Ad. News 5019, 5023 ......................................................................................20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:11-cv-00116-F |
| RANGE PRODUCTION COMPANY, | § | |
| A Delaware Corporation; and | § | |
| RANGE RESOURCES CORPORATION, | § | |
| A Delaware Corporation, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE ROYAL FURGESON, UNITED STATES DISTRICT JUDGE:

Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), Defendants, Range Production Company and Range Resources Corporation (collectively referred to as "Range"),[1] file this Motion to Dismiss for Lack of Subject Matter Jurisdiction Or, In The Alternative, Motion to Dismiss for Failure to State a Claim, and respectfully show the following:

### SUMMARY OF ARGUMENT

1.     Plaintiff seeks, on behalf of the Administrator of the Environmental Protection Agency ("EPA"), to enforce an Emergency Administrative Order signed by EPA on December 7, 2010 (the "Order").  The Order was issued pursuant to Section 1431 of the Safe Drinking Water Act ("SDWA" or the "Act"), which requires an "emergency," *i.e.*, imminent and substantial endangerment.  EPA unilaterally issued the Order, without notice and without

---

[1] Range Resources Corporation and Range Production Company are separate legal entities and are referred to herein together as "Range" solely for convenience.

affording Range an opportunity for hearing, approximately four months after receiving a complaint from a homeowner about natural gas in a private water well. In the Order, EPA purports to make a legal conclusion that Range caused or contributed to alleged contamination in two private water wells (the "Private Water Wells"), but EPA has never proven, or even alleged as a factual matter, that Range actually caused or contributed to the alleged contamination, nor has EPA claimed that Range violated any statutory or regulatory provision. And, Plaintiff makes no such allegation and offers no such proof in this case. Instead, EPA seeks to relegate the Court to acting solely in a ministerial-like capacity of holding a show-cause hearing to enforce the far-reaching and oppressive terms of the Order, while relieving itself of any burden to ever prove that an "emergency" actually existed and that Range violated any law or caused or contributed to the contamination. In other words, EPA seeks to deprive Range of both any evidentiary hearing and any meaningful judicial review of the Order.

2.      Contrary to EPA's contentions in the Order, there was no "emergency" because natural gas has existed in this area of the Trinity aquifer for many years before Range drilled its gas wells in the Barnett Shale formation approximately one mile underneath the aquifer, the complaining homeowner had ceased using his water well, and the alleged "contamination" did not pose an unreasonable risk to human health or risk of explosion. [App. 34-36]. Indeed, after notice and an evidentiary hearing, examiners of the Texas Railroad Commission determined that the source of the natural gas in the water wells is the gas-bearing Strawn formation which lies directly under, and is in geologic contact with, the formation containing the Trinity aquifer, and that Range has not caused or contributed to any alleged contamination. [App. 34-36].

3.      In the Complaint, Plaintiff seeks permanent injunctive relief and the imposition of substantial civil penalties based solely on alleged violations of the Order, which is not currently

ripe for enforcement. Statutory schemes like the SDWA, which purport to authorize the imposition of penalties based solely on the alleged failure to comply with a unilateral administrative order issued without notice or opportunity for hearing, raise significant due process concerns. To avoid these constitutional concerns, unilateral agency orders should be construed such that they do not have the force of law until it has been proved that a law has been violated or that the defendant is otherwise liable for the alleged contamination. In other words, the Order should not be considered "final" for purposes of an enforcement action unless EPA pleads that Range violated some law or is otherwise liable for the alleged contamination forming the basis of the Order. Thus, the Complaint should be dismissed for lack of subject matter jurisdiction because the Order is not ripe for enforcement under Section 1431(b).[2] In the alternative, the Complaint should be dismissed for failure to state a claim because Plaintiff has failed to plead the requisite elements necessary to satisfy due process and facts necessary to state a claim for relief that is plausible on its face.

4. If EPA stands on its current pleadings in which it seeks enforcement of its unilateral Order without proof of anything other than the fact that it issued the Order and that Range has failed to comply with some provision of it, Range's 12(b)(1) motion should be granted and the complaint dismissed because the Order is not currently ripe for enforcement. In the alternative, the complaint should be dismissed for failure to state a claim.

---

[2] It is not Range's position in this motion that orders issued under Section 1431(a) are meaningless or always unconstitutional. Such unilateral orders may serve a valid purpose of obtaining voluntary compliance from the regulated party. Instead, this motion addresses attempts by EPA to enforce a unilateral compliance order issued without notice or hearing and obtain injunctive relief and penalties under Section 1431(b) based solely on EPA's theory that it can give the force of law to such an order without alleging and proving the Range has violated the SDWA.

## BACKGROUND

The following information simply provides background and context in connection with the Order issued by EPA. However, as demonstrated in the Brief in Support of the 12(b)(1) and 12(b)(6) motions, the Court will not be called on to resolve factual disputes in deciding the motions. Both motions can be decided based on established legal principles that are consistently applied to enforcement actions like this one.

**A.   Range's Gas Wells.**

5.    The Order deals with two natural gas wells (the "Gas Wells") drilled by Range in 2009 in Hood County, Texas. [App. 13, FOF 4-5].[3] The Gas Wells are horizontal wells drilled in the Barnett Shale productive formation. As depicted below, a Barnett Shale horizontal well is first drilled vertically to a depth of several thousand feet before the well bore turns horizontal.



---

[3] The Appendix is filed in support of the Rule 12(b)(1) motion only. *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (holding that attachment of exhibits to a Rule 12(b)(1) motion does not convert it into a summary judgment motion).

Because the horizontal portion of the well is usually more than a mile below the surface of the earth, there are many different layers of rock that serve as barriers between the horizontal well bore and geological layers close to the surface. Plaintiff admits that the horizontal wellbores for the Gas Wells are located approximately one mile below the surface. [App. 4, ¶ 17].

**B.      The Private Water Wells.**

6.      In the Order, EPA purports to make a legal conclusion that Range caused or contributed to the alleged contamination of two private water wells located in Silverado Subdivision in Parker County, Texas. [App. 17, ¶ 46]. Domestic Well 1 is a private water well at a home owned by Steven and Shyla Lipsky (collectively "Lipsky), which was drilled in 2005 to a depth of approximately 200 feet. [App. 37, FOF 8]. Domestic Well 2 is a private water well at a home owned by Mr. and Mrs. Rick Hayley (collectively "Hayley"), which was drilled in 2002 to a depth of approximately 220 feet. [App. 15, FOF 34]. The Lipsky tract is adjacent to the Hayley tract. [App. 26; 38, FOF 10].

**C.      The Order.**

7.      In the Order, EPA purports to make various findings, none of which is that Range actually caused or even contributed to the alleged contamination of the Private Water Wells. However, EPA purports to make various legal conclusions, including that Range "caused or contributed to the endangerment identified herein." [App. 17, ¶ 46]. The Order purports to require Range to undertake various actions and specifies deadlines (ranging from 48 hours to 60 days) by which Range must complete each of the ordered actions. [App. 17, ¶ 50]. The Order further states that Range's failure to timely complete any of the actions "shall be

deemed a violation of [the] Order," and that each such violation may subject Range to civil penalties of up to $16,500 per day. [App. 19, 21, ¶¶ 57, 63-64].

8.    The Order was issued without, and does not provide for, an administrative hearing or any other adjudicatory process. Even after the Order was issued, Range was provided only "the opportunity to confer informally with EPA" concerning the Order's terms and applicability, and Range was required to avail itself of that opportunity within seven days of receipt of the Order. [App. 22, ¶ 71]. Moreover, the Order specifically provides that the proffered informal conference "is not an evidentiary hearing, does not constitute a proceeding to challenge the Order, and does not give [Range] the right to seek review of [the] Order." [*Id.*]

### D.    EPA's admissions after issuance of the Order.

9.    Following issuance of the Order, Range reimbursed or began paying for the alternative water being trucked in to Lipsky, offered to do the same for the Hayleys, and installed explosivity meters in the Lipsky and Hayley homes.[4]  Range also incurred the cost of hiring experts to perform extensive gas, water, soil-gas, and geological analyses in connection with the Texas Railroad Commission's investigation and hearing held on January 19-20, 2011. This extensive testing proves that (1) the Gas Wells are not leaking gas into the aquifer, (2) there are no geologic pathways for gas to migrate from Range's Barnett Shale horizontal wellbores one mile below the surface up to the Private Water Wells, and (3) the source of the gas in the Private Water Wells is the shallow, gas-bearing Strawn formation located directly under the aquifer. [App. 25-36; 38-40, FOF 13, 17, 20, 24-27]. EPA was compelled to provide a deposition in connection with the Railroad Commission hearing in which it made numerous admissions which illuminate the utter lack of due process in the manner in which the Order was issued.

---

[4] Range offered, and was willing, to assist Lipskys and Hayleys, not because of any wrongdoing, but because the Texas Railroad Commission requested Range to do so while its investigation was ongoing. [App. 26].

10.     EPA admitted that, before issuing the Order, it knew Lipsky had ceased using the water well, that Lipsky had a water purification system, and that EPA's own water tests on the Lipsky water well revealed no quantities or constituents that posed any health concerns. [App. 78-79, 83, 87-88; 33, 39, FOF 20-22].   EPA admitted that it issued the Order to address "the threat of explosion." [App. 84].[5]  EPA also was aware that water wells in the area of the Private Water Wells had experienced significant amounts of natural gas years before Range drilled the Gas Wells but, nonetheless, dismissed all alternative scenarios as to how gas may be occurring in the Private Water Wells. [App. 71-72, 75, 86]. EPA conceded that it (1) failed to evaluate the geology in the area and, (2) failed to consider that the natural gas-bearing Strawn formation, which lies immediately below the aquifer, could be causing the gas in the Private Water Wells. [App. 75-77, 80-82]. EPA even confessed that Range **may not** have caused or contributed to the natural gas in the water wells and, contrary to paragraph 46 of the Order, would only say under oath that Range **may** have caused or contributed to natural gas in the water well. [App. 88].

11.     EPA purported to rely on the fact that the gas in both the water wells and the Gas Wells was thermogenic. [App. 5, ¶ 23; 15, ¶¶ 25-26]. However, since all natural gas produced from the Fort Worth Basin is thermogenic, that fact simply does not – and cannot – identify the source of the gas. [App. 30, 34-35, 39-40, FOF 23-25]  And, EPA knew that before it issued the Order because it had been told by experienced personnel at the laboratory to which EPA sent the gas samples that EPA needed to evaluate the potential for other geologic sources of the gas in the aquifer before concluding that the gas came from the Barnett Shale and that Range had caused

---

[5] Lipsky has a history of closing the gas vent on his water well to allow the head-space gas to become more concentrated, hooking a garden hose to the vent, and igniting the gas coming out of the hose to make it appear as though water from the well was being lit on fire. [App. 93-94]. Instead of ordering Lipsky to not use the water in his water well and to stop attempting to light the gas coming out of the hose attached to the gas vent on the water well, EPA now claims that it does not have the authority to order Lipsky to do anything. [App. 80, 94].

the contamination. [App. 89-91, 100]. In fact, Dr. Doug Beak, EPA's in-house expert, told EPA before the Order was issued that he could not compare the gas fingerprinting and compositional data on which EPA relies, and that the "only way to compare the data would be to make assumptions to fill in data and gaps and [he did not] believe [EPA had] enough experience at this site or data to do this at this time." [App. 91-92, 101-02]. EPA chose to ignore the fundamental flaws in its data and analysis.

### E.   Texas Railroad Commission Proposal for Decision.

12.   The hearing examiners for the Texas Railroad Commission have issued a proposal for decision (PFD) in which they conclude, based on the evidence presented at the hearing:

> "The examiners find that Range's evidence clearly demonstrates that its drilling and operations of the Teal and Butler wells have not contributed to contamination of any domestic water wells. The examiners further find that the most likely source of gas in the Lipsky well and the other domestic water wells in the area is the shallow Strawn formation."
>
> ***
>
> "Based on the evidence, the examiners conclude that gas produced in the Lipsky water well and other area water wells is from the Strawn formation which is in direct communication with the Cretaceous aquifer in which the water wells are completed. Some of the water wells even penetrated the Strawn formation. There is no evidence to indicate that either the Teal well or the Butler well is the source of gas production in the area water wells. When the appropriate parameters are used in a fingerprinting study, it is clear that the gas produced from the water wells is from Pennsylvanian rock (Strawn) which is significantly different in composition than Barnett Shale gas."

[App. 34, 36]. The Railroad Commission will consider adopting the PDF as a Final Order at its March 22, 2011 regular, open hearing.

### F.   SDWA.

13.   Section 1431 of the SDWA sets forth EPA's "emergency powers" to take action "necessary to protect the health of persons" threatened by an "imminent and substantial endangerment" to human health by way of drinking water contamination. 42 U.S.C. § 300i(a).

Section 1448 of the SDWA provides that a petition for judicial review of "any … **final** action of the [EPA] Administrator" under the Act "may be filed in the circuit in which the petitioner resides or transacts business which is directly affected by the action." 42 U.S.C. § 300j-7(a)(2) (emphasis added). "Any such petition shall be filed within the 45-day period beginning on the date of the … final Agency action with respect to which review is sought …." *Id.* § 300j-7(a). Additionally, an EPA action that "could have been" reviewed under Section 1448 "shall not be subject to judicial review in any civil or criminal proceeding for enforcement or in any civil action to enjoin enforcement." *Id.* On its face, the Order claims to be "final agency action for purposes of SDWA § 1448." [App. 21, ¶ 70].

### G. Range's Fifth Circuit Petition for Review.

14. As discussed below, the Order does not constitute final agency action in the sense that it can be enforced without pleading and proof of a violation of law or the essential elements of a viable theory of liability, including a causal connection between Range's conduct and the alleged contamination. However, EPA's assertion on the face of the Order that it is "final," and the provisions of the Act precluding review that "could have been obtained" under Section 1448, necessitated Range's filing of a petition for review of the Order in the Fifth Circuit to protect Range's interests. [App. 21, ¶ 70]. Range's petition for review was timely filed on January 20, 2011, and Range's Fifth Circuit brief is due on March 22, 2011. Although similar arguments about the lack of finality will be raised by Range in its Fifth Circuit brief, that does not alter the fact that this Court must determine whether it has jurisdiction. Whether the Order is ripe for enforcement under Section 1431(b) lies at the heart of the Complaint and should be determined by the Court.

Case 3:11-cv-00116-F   Document 7   Filed 03/21/11   Page 15 of 31   PageID 47

## MOTION TO DISMISS

15.     Pursuant to FED. R. CIV. P. 12(b)(1), Range moves to dismiss for lack of subject matter jurisdiction because the Order is not ripe for enforcement under Section 1431(b) of the Act.[6]  42 U.S.C. § 300i(b).  Plaintiff seeks to obtain substantial civil penalties against Range based solely on Range's alleged violations of the Order, and without ever having to prove that Range actually violated any statute, regulation or other law, or that Range actually caused or even contributed to the alleged contamination or endangerment.  In the alternative, Range seeks dismissal under 12(b)(6) because EPA has failed to state a claim on which relief can be granted.

16.     Courts construing statutory authorities similar to Section 1431 have held that they raise significant due process concerns if EPA seeks enforcement without pleading and proving a statutory violation or other theory of liability for the alleged endangerment.  To avoid these constitutional shortcomings, unilateral administrative orders, like the Order, should not be considered "final" orders that can be enforced by the imposition of severe civil penalties unless the enforcement action is predicated on an actual statutory violation or liability for the alleged contamination.  In the Complaint, Plaintiff does not plead that Range violated any provision of the Act or other law and does not allege or seek to prove that Range actually caused, contributed, or had any connection to the alleged contamination of the water wells.  Plaintiff also fails to plead facts to prove that the statutory prerequisites for issuing the Order actually existed.  Thus, Plaintiff's attempt to enforce the Order is premature and not ripe, and the Court lacks subject matter jurisdiction to enforce the Order as EPA seeks in its Complaint.

---

[6] Of course, dismissal would be without prejudice. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).  If this matter is dismissed, EPA may move forward if it chooses to do so but, as shown below, it must first plead and seek to prove a violation of law and a causal connection with the alleged contamination before the Order is ripe for enforcement.

17.     In the alternative, Plaintiff fails to state a claim and dismissal is proper under FED. R. CIV. P. 12(b)(6).  Plaintiff does not plead or seek to prove that Range actually violated any statute, regulation or other law, nor does Plaintiff plead or seek to prove that Range actually caused or contributed to the alleged contamination or endangerment as required to establish liability against Range.  Moreover, Plaintiff fails to plead facts to prove that the statutory prerequisites for issuing the Order under Section 1431(a) actually existed.  To satisfy due process, these are necessary elements of an enforcement action under Section 1431(b).  In addition, dismissal is proper because Plaintiff fails to plead facts to state a claim that is plausible on its face.  Plaintiff has not pleaded any facts that plausibly give rise to a reasonable inference that Range is liable for or caused the contamination.  For example, Plaintiff alleges no plausible set of facts to prove that gas being produced by Range approximately one mile below the earth's surface has contaminated a water aquifer located a mere 200 feet below the surface.  Plaintiff has not pleaded any facts to establish that a geologic pathway exists from the location of Range's production one mile below the surface up to the surface,[7] or that gas is leaking from Range's gas wells.  EPA's claim for relief cannot be based on conclusory allegations, surmise, or speculation, and should be dismissed for failure to state a claim.

**BRIEF IN SUPPORT OF MOTION**

**A.     Section 1431 of the Act.**

Section 1431 of SDWA provides that the Administrator:

> upon receipt of information that a contaminant which is present in
> or is likely to enter a public water system or an underground source

---

[7] Indeed, the Order requires Range to "identify gas flow pathways to the Trinity Aquifer." [App. 18, ¶ 50(F)]. EPA simply assumes that such pathways exist (which Range disputes).  The fact that EPA concluded in the Order that Range "caused or contributed" to the alleged endangerment without knowing whether a geologic pathway even exists exemplifies the due process concerns inherent in allowing an agency to enforce a unilateral order without having to plead and prove a violation of law or other legal basis for imposing liability.

> of drinking water, … which may present an imminent and substantial endangerment to the health of persons, and that appropriate State and local authorities have not acted to protect the health of such persons, may take such actions as he may deem necessary in order to protect the health of such persons… The action which the Administrator may take may include (but shall not be limited to) (1) issuing such orders as may be necessary to protect the health of persons who are or may be users of such system (including travelers), including orders requiring the provision of alternative water supplies by persons who caused or contributed to the endangerment, and (2) commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction.

42 U.S.C. § 300i(a).  Subsection (b) of Section 1431 provides:

> Any person who violates or fails or refuses to comply with any order issued by the Administrator under subsection (a)(1) of this section may, in an action brought in the appropriate United States district court to enforce such order, be subject to a civil penalty of not to exceed [$16,500] for each day in which such violation occurs or failure to comply continues.

*Id.* § 300i(b); 40 C.F.R. § 19.4 Table.

In several environmental statutes, Congress has given EPA the choice of at least two options – commence a civil action or issue an agency order – upon the agency's receipt of "information," or some similar standard.[8]  Thus, EPA can choose to file suit in district court where it will be subject to discovery and required to prove its case by a preponderance of the evidence or, EPA can issue a unilateral order in which it sets forth its allegations as "findings of fact," its legal contentions as "conclusions of law," and its prayer for relief as "ordering provisions."  *See Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1079-80 (3d Cir. 1989) (noting that unilateral order under Clean Air Act "sets forth what are denominated as 'Findings of Fact,' 'Conclusions of Law,' and an 'Order'" despite the fact that there had been no "hearing or adversarial factfinding process.").

---

[8] *See, e.g.*, 42 U.S.C. §§ 6934 , 6973 (RCRA); 33 U.S.C. § 1319 (Clean Water Act); see also 42 U.S.C. § 9606(a) (CERCLA).

Section 1431 is similar to these other environmental statutes.  Under Section 1431(a), upon "receipt of information" that there is an endangerment and that local authorities have failed to act, EPA has two explicit options: (1) file suit in district court, or (2) issue an administrative order.  Significantly, however, such administrative orders are not self-executing.  *See* 42 U.S.C. § 300i(b) (providing that a person who violates a unilateral order "may" be subject to a civil penalty in a district court action brought by EPA) (emphasis added).[9]  If a respondent fails or refuses to comply with such an order, EPA has discretion to either do nothing or file suit under Section 1431(b) to enforce the order.  Nothing in Section 1431 requires EPA to file suit to enforce an agency order if the recipient fails to comply.  *See Ross Incineration Servs., Inc. v. Browner*, 118 F. Supp. 2d 837, 845-47 (N.D. Ohio 2000) (emphasizing that Congress gave EPA discretion to decide which administrative orders to enforce); *Amoco Oil Co. v. EPA*, 959 F. Supp. 1318, 1324 (D. Colo. 1997).

As a result, EPA issues such orders unilaterally, without giving the respondent any prior notice or opportunity for hearing and without conducting any kind of adjudication.  Although EPA creates an "administrative record" of sorts, its only purpose is to show that, prior to issuing the order, EPA received information that there was an endangerment and local inaction.  Thus, in compiling the "record," EPA includes **only** information that it believes supports its position and

---

[9]Courts emphasize that such an order itself does not impose any penalties. *See, e.g., Sackett v. EPA*, 622 F.3d 1139, 1143 (9th Cir. 2010, *pet. for cert. filed*, Feb. 23, 2011) ("[N]o sanctions can be imposed, or injunctions issued, for noncompliance with a compliance order [issued by EPA under the Clean Water Act] until the EPA brings a civil enforcement action in district court."); *So. Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*, 20 F.3d 1418, 1427 (6th Cir.1994); *Hoffman Group, Inc. v. EPA*, 902 F.2d 567, 569 (7th Cir.1990); *So. Pines Assocs. by Goldmeier v. United States*, 912 F.2d 713, 717 (4th Cir.1990); *Hobbs v. United States*, 947 F.2d 941, 1991 WL 230202, *6 (4th Cir. 1991) (unpublished opinion) (explaining that unilateral orders issued by EPA under the Clean Water Act "do not in themselves impose penalties," but rather penalties are imposed by a district court); *Armco, Inc. v. EPA*, 124 F. Supp. 2d 474, 478 (N.D. Ohio 1999) (explaining that section 3013 of RCRA "is not self-executing on the issue of fines," rather "it authorizes a court to impose fines in response to an EPA enforcement action.").

purposefully **excludes** any evidence that refutes or contradicts its position. [App. 67-71, 73-74, 85].

Issuing these kinds of orders is often the only "enforcement" tool available to EPA other than court action. Thus, despite the procedural infirmities and limited usefulness of the orders, EPA makes every effort to maximize their value as negotiating tools.[10] Such orders typically include what purport to be findings of fact and conclusions of law, despite the lack of any kind of adjudicatory process. And, the orders routinely state, on their face, that they constitute final agency action. However, these kinds of unilateral orders are essentially just administrative complaints. As explained by the Third Circuit:

> The Administrative Order in this case sets forth what are denominated as 'Findings of Fact,' 'Conclusions of Law,' and an 'Order.' Such characterizations are ordinarily made by an agency or court following a hearing. There was no such hearing or adversarial factfinding process in this case. Thus, **notwithstanding the headings, the 'Findings of Fact' and 'Conclusions of Law' merely state EPA's position and are best analogized to a complaint.** They allege the EPA's position with respect to the relevant facts, the crux of the dispute, the procedural sequence, and EPA's legal position.

*Solar Turbines*, 879 F.2d at 1079-80 (emphasis added).[11] As a result, EPA's burden of proof in an enforcement action is the same as if it had initially filed suit without issuing the unilateral order. *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 493-94, 124 S.Ct. 983, 1005 (2004); *Sackett*, 622 F.3d at 1143-44 (holding that a court cannot assess penalties for violations of a compliance order unless EPA proves in an enforcement suit according to

---

[10] *See Browner*, 118 F. Supp. 2d at 846-47 (noting that EPA's issuance of such unilateral emergency orders under RCRA often "produce[s] a settlement of the parties' dispute with no judicial intervention at all" because, although the recipients of such orders may simply choose not to comply, they often "choose to comply … and negotiate with the EPA regarding the type and extent of modifications" or other actions necessary); *So. Pines Assocs.*, 912 F.2d at 716 n. 3 (explaining that by issuing a unilateral compliance order, EPA sought "to negotiate a solution rather than to institute civil proceedings immediately").

[11] EPA itself has taken the position that such unilateral administrative orders are "'*in the nature of an administrative complaint.*'" *See Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236, 1251 (11th Cir. 2003), *cert. denied*, 541 U.S. 1030 (2004) (emphasis added).

traditional rules of evidence and by a preponderance of the evidence, that the defendants actually violated the Clean Water Act); *Hobbs*, 947 F.2d 941, 1991 WL 230202, at *6; *So. Pines Assoc.*, 912 F.2d at 715-16; *U.S. v. Valentine*, 856 F. Supp. 621, 627 (D. Wyo. 1994).

Nevertheless, by virtue of its allegations in the Complaint, EPA must believe that, by issuing a unilateral order, the agency has somehow relieved itself from the burden of having to prove its case against Range in an enforcement action. EPA pleads that it is entitled to a judgment requiring Range to comply with the Order and pay substantial penalties based solely on Range's alleged violation of the Order itself.

**B.     The Complaint should be dismissed for lack of subject matter jurisdiction because enforcement is premature and is not ripe.**

"It is always the obligation of a federal court to determine if it has jurisdiction." *Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir. 1979) (*quoting State of Alabama ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973)). A court does not have subject matter jurisdiction over a claim that is premature and not ripe for adjudication. *See Shields v. Norton*, 289 F.3d 832, 834-35 (5th Cir.), *cert. denied*, 123 S. Ct. 663 (2002). Generally, an administrative action must be final before a lawsuit regarding that action is ripe. *See Save Barton Creek Ass'n v. Federal Highway Admin.*, 950 F.2d 1129, 1132-33 (5th Cir.), *cert. denied*, 112 S. Ct. 3029 (1992); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1456 (9th Cir. 1987), *cert. denied*, 108 S. Ct. 775 (1988). One of the factors to consider in determining whether an order is "final" is whether the agency has consummated its investigation and decision-making process. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Inasmuch as EPA sent its request for information related to this matter to Range as recently as March 9, 2011, EPA is still clearly in an investigative mode and shy of concluding that Range is responsible for any violation of the Act. [App. 105-08].

As shown below, under statutory authorities similar to the Act, unilateral agency orders are not considered "final" orders that can be enforced in an enforcement action in the absence of pleading and proof of actual statutory violations or the essential elements of some other theory of liability, including a causal connection. Although the Order, on its face, purports to be "final," any construction of Section 1431(b) that would authorize enforcement of the Order without pleading and proof of a violation of law or the essential elements of some other theory of liability under the Act leads to due process violations. Thus, the Order is not "final" in the sense that it is not currently ripe for enforcement.

### (1)   *Tennessee Valley Auth. v. Whitman*

In *Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236 (11th Cir. 2003), *cert. denied*, 541 U.S. 1030 (2004) ("TVA"), the court dealt with an administrative compliance order issued by EPA under the Clean Air Act. The court held that, because a compliance order could be issued based on a finding made on the basis of "any information available" and because penalties could be imposed solely on the basis of noncompliance with the unilateral order, the statutory scheme violated the constitutional requirements of due process and separation of powers. *Id.* at 1243.

The court held that, unlike other options in the Clean Air Act in which the regulated party had a reasonable opportunity to be heard and present evidence, the constitutional problem with the compliance order option "stems from their injunction-like legal status coupled with the fact that they are issued without an adjudication or meaningful judicial review," including any sort of adjudication that a party has violated the Clean Air Act. *Id.* at 1241. The court held:

> The statutory scheme established by Congress – in which the head of an executive branch agency has the power to issue an order that has the status of law after finding, "on the basis of any information available," that a CAA violation has been committed – is repugnant to the Due Process Clause of the Fifth Amendment.[footnote omitted]   Before the Government can impose severe civil and criminal penalties, the defendant

is entitled to a full and fair hearing before an impartial tribunal 'at a meaningful time and in a meaningful manner.'

*Id.* at 1258 (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).[12]   The court concluded that, under the statutory scheme, neither judicial review of the order by the court of appeals, nor the district court action for enforcement provide the regulated parties with a meaningful opportunity to be heard. *Id.* at 1259.  Thus, the court held that mere noncompliance with a compliance order cannot be the sole basis for the imposition of severe civil and criminal penalties *Id.* at 1260.  Rather, the court held that to prevail in an enforcement action, EPA must prove that the defendant violated the statute. *Id.*

>   **(2)   Courts construe similar statutory schemes in a manner that avoids the due process concerns addressed by *TVA* by requiring EPA to prove its case.**

Courts consistently hold that EPA's liability determinations are entitled to no deference; rather, issues related to liability are determined de novo by the courts.  For example, in *Kelley v. EPA*, 15 F.3d 1100, 1106-08 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995), the court held that "**Congress ... has designated the courts and not EPA as the adjudicator of the scope of CERCLA liability.**"[13]  In *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 661 (7th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996), the court noted that, whether the EPA seeks a

---

[12] The court noted, and distinguished, the Clean Air Act provision regarding the issuance of emergency orders.  Under that provision, EPA was required to meet "rigorous requirements," including that EPA must first resort to filing suit for injunctive relief, and EPA could only issue an order on its own initiative if it is not practicable to assure the prompt protection of public health or welfare by recourse to a judicial forum. *Id.* at 1249.  Moreover, such an order could only remain in effect for, at most, 60 days, and "any extension must be made by a federal court based upon proof that the defendant has caused extremely harmful pollution." *Id.*  The emergency order provision in Section 1431(a) of the SDWA at issue in this case contains none of the rigorous requirements and due process protections contained in the emergency order provision in the Clean Air Act.  Instead, Section 1431(a) is like the broad compliance order provision under the Clean Air Act, and enforcement under Section 1431(b) would result in the same due process violations found by the *TVA* court.

[13] *Id.* at 1107-08 (emphasis added) (citing *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-650, 110 S.Ct. 1384, 1390-91, 108 L.Ed.2d 585 (1990) ("Congress has expressly established the Judiciary and not the Department of Labor as the adjudicator of private rights of action arising under the statute.")).

mandatory injunction to force compliance with an agency order or sues to recover the cost of remediation, "[t]he defendant would have an opportunity in that suit to **put the EPA to its proof** that the Superfund law really did require the defendant to clean up the site." (emphasis added). In *Redwing Carriers, Inc. v. Saraland Apartments*,[14] the Eleventh Circuit held that:

> When the EPA issues a § 106 order to a party … the **EPA is acting in its role as prosecutor** in enforcing a federal environmental statute. Any findings made in such orders are therefore not entitled to deference … [N]either the district court nor this Court are obliged to defer to the agency's conclusions on this issue. **Courts, not the EPA, are the adjudicators of the scope of CERCLA liability.**

*Id.* at 1507 n. 24 (emphasis added).

Likewise, in *Sackett v. EPA*, 622 F.3d 1139 (9th Cir. 2010, *pet. for cert. filed*, Feb. 23, 2011), the court dealt with a unilateral agency order issued by EPA under the Clean Water Act. Similar to Section 1431(b), the Clean Water Act stated that a person who violates "any order" issued by the Administrator is subject to a civil penalty of $25,000 per day for each violation. *See Sackett*, 622 F.3d at 1145. The Sacketts argued that the statutory scheme created the same due process violations that existed in *TVA*. *Sackett*, 622 F.3d at 1144-45. The court recognized that a literal reading of the statute "suggests that [the Sacketts] risk substantial penalties for violating the compliance order, even if they did not violate the CWA, if the EPA establishes in an enforcement proceeding that the compliance order was validly issued based on 'any information available.'" *Id.* at 1145 (*citing TVA*, 336 F.3d at 1259). However, to avoid the due process violation raised by a literal reading, the *Sackett* court held that, because EPA was authorized only to sue to enforce an order for a violation of the CWA, the term "any order" in the penalty provision referred "only to those compliance orders that are predicated on *actual*, not alleged, violations of the CWA, as found by a district court in an enforcement action according to traditional civil evidence rules and burden of proof." *Id.* (emphasis in original).

---

[14] 94 F.3d 1489 (11th Cir. 1996).

(3)    **As pleaded, the Order is not ripe for adjudication and the Complaint should be dismissed for lack of jurisdiction.**

Plaintiff seeks substantial civil penalties based solely on Range's alleged violation of the Order. Plaintiff's attempt to enforce the Order through the imposition of penalties without ever having to prove that Range actually violated some law or regulation, or is liable for the alleged contamination, raises the same due process concerns recognized in *TVA*. Moreover, the due process concerns are further heightened in this case because Plaintiff not only seeks penalties under Section 1431(b), it also seeks a mandatory injunction under Section 1431(a). Despite having pleaded no violation of law or other theory of liability, Plaintiff asks this Court to order Range to engage in long-term and costly "corrective action," by enforcing oppressive and ambiguous requirements set forth in the Order. The Order purports to require Range to identify gas flow pathways *anywhere* within the 20-county aquifer, eliminate gas flows *anywhere* within the 20-county aquifer, and to remediate areas that have been impacted *anywhere* within the 20-county aquifer. [App. 13, 18, ¶¶ 6, 50(F)]. The Order also purports to require Range to eliminate gas flows into the aquifer that originate in sub-surface formations other than the Barnett Shale (such as the shallow Strawn formation) and to remediate the aquifer, even though the gas flow is naturally occurring or caused by sources other than Range. *[Id.]*.[15]

Consistent with the case law discussed above, the constitutional requirements of due process and separation of powers prevent an agency from creating legal requirements in a

---

[15] Even if paragraph 50(F) of the Order was limited to contamination allegedly caused by Range's conduct (and it is not), it would have the effect of wrongfully providing EPA with the ultimate relief sought through a mandatory restraining order or preliminary injunction-like order without having to prove by a preponderance of the evidence any culpability by Range or providing Range any opportunity to contest the action. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 476 (5th Cir. 1985); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976); *Crawford v. Univ. of North Carolina*, 440 F. Supp. 1047, 1058 (M.D.N.C. 1977) ("[A preliminary] injunction should not work so as to give the party the full relief which he seeks on the merits, especially when the order would require the payment of money.").

unilateral agency order without ever having to prove an underlying violation of the law or other

legal basis for the imposition of liability.  Construing Section 1431(b) to require EPA in an

enforcement action to plead a violation of law or some other legal basis for imposing liability is

consistent with the legislative history establishing that Congress intended Section 1431 to be

"essentially a codification of common law nuisance remedies" and to incorporate the legal

theories used "to assess liability for creating a public nuisance."  S. Rep No. 96-172, 96th Cong.,

2d Sess., at 5, *reprinted in* 1980 U.S. Code Cong. & Ad. News 5019, 5023.  To be subject to

liability for a public nuisance under any common law theory, a defendant's conduct or activity

must have caused or contributed to the nuisance.  *See Cox v. City of Dallas*, 256 F.3d 281, 290 n.

16 & 292 n. 19 (5th Cir. 2001).

Thus, to avoid the inherent due process concerns, the Court should construe Section

1431(b) of the Act to refer only to "any order" that is predicated on *actual* violations of a statute

or regulation or on some other *proven* theory of liability.  *See Sackett*, 622 F.3d at 1145-46; *see*

*also Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S.

568, 575 (1988) (holding that courts must resort to "every reasonable construction" of a statute to

save it from unconstitutionality).  Under this interpretation, EPA cannot pursue an enforcement

action and seek the imposition of penalties for alleged violations of the Order unless it also

pleads and proves by a preponderance of the evidence that Range actually violated the Act or

some law or regulation, or actually caused or contributed to the alleged contamination such that

it is liable under some viable legal theory.  *Id.*

A construction of Section 1431(b) that does not require pleading and proof of a rational

nexus between the regulated party's conduct or legal duties and the alleged contamination or

imminent danger is too broad to pass constitutional muster.[16]   Thus, at a minimum, Plaintiff should be required to plead and prove the elements of a viable theory of liability, including that Range caused or contributed to the contamination of the water wells.   Indeed, Section 1431(a) states that EPA may require the provision of "alternative water supplies by persons who caused or contributed to the endangerment."  42 U.S.C. § 300i(a).   EPA ordered Range to provide alternative water supplies to the owners of the Private Water Wells, and EPA expressly concluded that Range caused or contributed to the endangerment. [App. 17, ¶¶ 46, 50(B)]. Thus, Plaintiff should be required to plead and prove the elements of a viable theory of liability, including that Range actually caused or contributed to the danger.  The Complaint fails to do so.

Moreover, in addition to failing to plead the elements of a viable theory of liability, Plaintiff also fails to allege facts to prove that the statutory prerequisites for issuing the Order actually existed.  For example, Plaintiff should be required to plead and prove that natural gas actually was present in, or likely to enter, "an underground source of drinking water," as required by Section 1431(a).  *See* 40 C.F.R. § 144.3.  Plaintiff should also be required to plead and prove that "an imminent and substantial endangerment to the health of persons" actually existed, and that "appropriate State and local authorities [actually] have not acted to protect the health of such persons." 42 U.S.C. § 300i(a). Because the Complaint seeks to enforce the Order based only on alleged violations of the Order, this enforcement action under Section 1431(b) is premature and not ripe, and the Court lacks subject matter jurisdiction.

---

[16] Otherwise, if the argument is accepted that a unilateral order under Section 1431(a) can be enforced against a person who has engaged in no wrongful conduct or has no causal connection or nexus to the alleged contamination, there would have been nothing to prevent EPA from ordering Your Honor to remediate the aquifer or risk being liable for civil penalties of $16,500 per day.

**C.     In the alternative, the Complaint should be dismissed for failure to state a claim.**

In the alternative, the Complaint should be dismissed for failure to state a claim under FED. R. CIV. P. 12(b)(6).  In the Complaint, Plaintiff alleges merely that (1) Range produces natural gas from the Gas Wells completed more than 5,800 feet below the surface of the earth in the Barnett Shale formation; (2) when the subsurface terminus of each of the Gas Wells is transposed to the surface of the earth and plotted, the surface plots are within a quarter mile of the Private Water Wells;[17] (3) contamination is present in the Private Water Wells, and the alleged contamination includes thermogenic natural gas; (4) based upon some information before it at the time, EPA determined that the alleged contamination in the Private Water Wells may present an imminent and substantial endangerment to human health; and (5) EPA issued the Order requiring Range to undertake the actions specified in the Order.  [App. 4-6].  These allegations – even if true – do not state a claim upon which relief can be granted.

**(1)     Plaintiff fails to plead necessary elements of an enforcement action.**

Under the rationale expressed in the CERCLA cases and in *Sackett*, Plaintiff should be required to plead and prove the validity of the Order in this enforcement action.  Plaintiff has failed to plead numerous elements of a claim that the Order was valid.  Plaintiff has not pleaded facts to establish that Range violated any provision of the Act, or any other law or regulation, or that Range actually caused or contributed to the alleged contamination or endangerment such that it is otherwise liable.  Indeed, in the Complaint, Plaintiff makes no allegation that any causal nexus exists between Range and the alleged endangerment.  Plaintiff also has failed to plead facts to prove that the Order was validly issued pursuant to the requirements of Section 1431(a).  Plaintiff has failed to plead factual allegations that an allegedly imminent and substantial

---

[17] Plaintiff simply ignores the fact that there is a one-mile vertical distance between the Gas Wells and the Private Water Wells.

endangerment to the health of persons existed. *See* 42 U.S.C. § 300i(a). For example, Plaintiff has failed to plead facts that the levels of contaminants in the two water wells actually were at levels that create health or safety concerns, or that there was a risk that the owners of the Private Water Wells would use the water at the time the Order was issued.

Plaintiff has also failed to allege facts that natural gas actually was present in, or likely to enter, "an underground source of drinking water," as defined in 40 C.F.R. § 144.3. Plaintiff's conclusory assumption that the aquifer is an underground source of drinking water, (*see* App. 8, ¶ 35) is insufficient to state a claim for relief. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff also has failed to plead facts that "appropriate State and local authorities have not acted to protect the health of such persons." *See* 42 U.S.C. § 300i(a). Plaintiff's conclusory allegations are insufficient. *Iqbal*, 129 S.Ct. at 1949.

### (2)   Plaintiff fails to state a claim that is plausible on its face.

Moreover, to survive a Rule 12(b)(6) motion, a plaintiff must plead facts to state a claim that is plausible on its face. *Id.* A complaint fails to state a claim for relief where the well-pleaded facts only permit an inference of "the mere possibility" of misconduct. *Id.* at 1950. The factual allegations must nudge the alleged claims "across the line from conceivable to plausible." *Id.* at 1951 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff has not alleged that Range violated any provision of the Act and has not pleaded any facts that plausibly give rise to a reasonable inference that Range caused or contributed to the contamination. For example, Plaintiff alleges no plausible set of facts to prove that gas being produced by Range approximately one mile below the earth's surface has allegedly contaminated a water aquifer located a mere 200 feet below the surface. Plaintiff has not pleaded any facts to establish that a

geologic pathway exists from the location of Range's production one mile below the surface up to the surface.  Likewise, there are no allegations that gas is leaking from Range's gas wells.

Plaintiff alleges that the gas in the water wells is thermogenic gas.  [*See* App. 5, ¶ 23].  However, Plaintiff pleads no facts to establish that the presence of thermogenic gas means that the source of the gas is one mile below the aquifer where Range's gas wells are producing.  All natural gas produced from the Fort Worth Basin is thermogenic.  Thus, merely identifying gas as thermogenic says nothing about whether the source of the gas is from one mile below the surface in the Barnett Shale formation or any formation between the Barnett Shale and the aquifer, especially the gas-bearing Strawn formation that lies directly below the aquifer.  The mere allegation or inference that it is possible or conceivable that the source of the gas in the Private Water Wells is the Barnett Shale formation is insufficient to state a claim for relief against Range.  *Iqbal*, 129 S.Ct. at 1949-51.  At best, the Order was based on unwarranted assumptions, suspicion, and speculation, and the Complaint, likewise, fails to state a claim for relief that is plausible on its face.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Range Production Company and Range Resources Corporation requests that the Complaint be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim, and for such other and further relief to which they may justly be entitled.

Respectfully submitted,

David P. Poole, General Counsel
State Bar No. 16123750
Range Production Company
100 Throckmorton St., Suite 1200
Fort Worth, Texas  76102
Tel. 817.869.4254

dpoole@rangeresources.com

HARRIS, FINLEY & BOGLE, P.C.
Andrew D. Sims
State Bar. No. 18415600
Russell R. Barton
State Bar. No. 01857250
777 Main Street, Suite 3600
Fort Worth, Texas  76102
Tel. 817.870.8700
Fax 817.332.6121
Asims@hfblaw.com
Rbarton@hfblaw.com

KELLY HART & HALLMAN LLP
Dee J. Kelly
State Bar No. 11217000
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Tel. 817.332.2500
Fax 817.878.9280
dee.kelly@kellyhart.com

KELLY HART & HALLMAN LLP
301 Congress Avenue, Suite 2000
Austin, Texas  78701
Tel. 512. 495.6400
Fax 512.495.6401


By:   */s/ J. Stephen Ravel*
        J. Stephen Ravel
        State Bar No. 16584975
        Steve.Ravel@kellyhart.com
        Diana L. Nichols
        State Bar No. 00784682
        diana.nichols@kellyhart.com

Attorneys for Range Resources Corporation
and Range Production Company

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the forgoing document was served as indicated below on this the 21st day of March, 2011, as follows:

**Via E-Mail: <u>Katherine.mcgovern@usdoj.gov</u>**
**& U.S. First Class Mail**
Katherine S. McGovern
Assistant United States Attorney
1100 Commerce Street, Suite 300
Dallas, Texas  75242

**Via E-Mail:  <u>henson.tucker@epamail.epa.gov</u>**
**& U.S. First Class Mail**
Tucker Henson
U.S. EPA Region VI
Office of Regional Counsel (6RC-EW)
1445 Ross Avenue, Suite 1200
Dallas, Texas  75202

**Via E-Mail:  <u>keith.tashima@usdoj.gov</u>**
**& U.S. First Class Mail**
Keith T. Tashima
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, DC 20044-7611

*/s/ J. Stephen Ravel*
J. Stephen Ravel

296244.9