UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-cv-00116-F |
| | § | |
| RANGE PRODUCTION COMPANY, | § | |
| A Delaware Corporation; and | § | |
| RANGE RESOURCES CORPORATION, | § | |
| A Delaware Corporation, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE
ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

---

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND............................................................................................ 2

REPLY TO GOVERNMENT'S ARGUMENTS................................................................ 3

I.  THE EPA ORDER IS NOT A FINAL AGENCY ACTION AND,
    THUS, IS NOT SUBJECT TO REVIEW IN THE FIFTH CIRCUIT
    OR RIPE FOR ENFORCEMENT...................................................................... 3

    A.  The Order is Tentative and Interlocutory, and It Does Not Mark the
        Consummation of the Agency's Decisionmaking Process....................... 4

    B.  The Order is Not Determinative of Range's Rights or Obligations ........ 6

II. IF THE EPA ORDER WERE A FINAL AGENCY ACTION THAT
    IMPOSED NEW LEGAL OBLIGATIONS ON RANGE, IT WOULD
    DEPRIVE RANGE OF PROTECTED PROPERTY INTERESTS.................. 8

III. DUE PROCESS WOULD NOT BE SATISFIED IF THE EPA ORDER
     WERE A FINAL AGENCY ACTION .............................................................. 9

    A.  Due Process Would Require Notice and an Opportunity For a Meaningful
        Hearing Prior to Issuance of the Order.................................................. 10

    B.  Even if Postponement of the Hearing Were Justified, Due Process
        Would Still Require a Fair and Meaningful Post-Deprivation Hearing ............... 11

        1.  Circuit-Level Judicial Review Under the Arbitrary and Capricious
            Standard Does Not Satisfy Due Process.................................... 11

        2.  This Enforcement Action, as Envisioned by EPA, Would Not
            Satisfy Due Process ................................................................... 13

IV. EPA HAS FAILED TO STATE A CLAIM .................................................... 14

CERTIFICATE OF SERVICE ...................................................................................... 16

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aeromar, C. Por A. v. Dep't of Transp.,*
 767 F.2d 1491 (11th Cir. 1985) .................................................................4

*Alaska Dept. of Envtl. Conserv. v. EPA,*
 244 F.3d 748 (9th Cir.2001), *aff'd* 540 U.S. 461 (2004)..........................7

*Am. Airlines, Inc. v. Herman,*
 176 F.3d 283 (5th Cir. 1999) ................................................................4, 5

*Bennett v. Spears*, 520 U.S. 154 (1997)..........................................3, 4, 5, 6

*Boddie v. Connecticut,*
 401 U.S. 371 (1971) .........................................................................10, 11

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
 333 U.S. 103 (1948) ................................................................................6

*Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust,*
 508 U.S. 602 (1993) ..............................................................................11

*Darby v. Cisneros,*
 509 U.S. 137 (1993) ................................................................................4

*Dow Chemical v. EPA,*
 832 F.2d 319 (5th Cir. 1987) ..................................................................6

*Employers Ins. of Wausau v. Browner,*
 52 F.3d 656 (7th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996) ...........8

*Fiallo v. Bell*, 430 U.S. 787 (1977) .........................................................12

*Fidelity Television, Inc. v. FCC,*
 502 F.2d 443 (D.C. Cir. 1974)................................................................5

*Franklin v. Massachusetts,*
 505 U.S. at 797 ......................................................................................6

*FTC v. Standard Oil Co.,*
 449 U.S. 232 (1980) ...............................................................................5

*Galvan v. Press*, 347 U.S. 522 (1954) .....................................................12

*Grace v. EPA*,
  261 F.3d 330 (3d Cir. 2001) ......................................................................... 10, 14

*Hannah v. Larche*,
  363 U.S. 420 (1960) .......................................................................................... 7

*Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*,
  452 U.S. 264 (1981) ......................................................................................... 10

*Huss v. Gayden*,
  571 F.3d 442 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1892 (2010)........................ 5

*Int'l Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec. Workers*,
  419 U.S. 428 (1975) .......................................................................................... 7

*Jelinek v. Casas*,
  328 S.W.3d 526 (Tex. 2010) ............................................................................. 5

*Kelley v. EPA*,
  15 F.3d 1100 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995) ........................ 7

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963) ......................................................................................... 11

*Opp Cotton Mills, Inc. v. Administrator*,
  312 U.S. 126 (1941) .......................................................................................... 9

*Pennzoil Co. v. FERC*,
  645 F.2d 394 (5th Cir.1981) ............................................................................. 5

*Philip Morris Inc. v. Reilly*,
  113 F. Supp.2d 129 (D. Mass. 2000), *aff'd*, 312 F.3d 24 (1st Cir. 2002) (en banc) ...............11

*Raytheon Aircraft Co. v. U.S.*,
  501 F.Supp.2d 1323 (D. Kan. 2007)................................................................. 8, 12

*Redwing Carriers, Inc. v. Saraland Apartments*,
  94 F.3d 1489 (11th Cir. 1996) ......................................................................... 7

*Sackett v. EPA.*,
  622 F.3d 1139 (9th Cir. 2010), *pet. for cert. filed*, 79 USLW 3514
  (Feb. 23, 2011).......................................................................................7, 8, 12, 14

*Shea v. Office of Thrift Supervision*,
  934 F.2d 41 (3d Cir.1991) ............................................................................... 5

*Tampa Times Co. v. NLRB*,
  193 F.2d 582 (5th Cir. 1952) ........................................................................... 5

*Tennessee Valley Auth. v. Whitman,*
 336 F.3d 1236 (11th Cir. 2003) (hereinafter, "*TVA*") .................................................... 8

*Territorial Court v. EPA,*
 No. 01-3670, 54 Fed. Appx. 339 (3rd Cir. Oct 07, 2002) ........................................... 7

*U.S. Steel Corp. v. Fri,*
 364 F.Supp. 1013 (N.D. Ind. 1973) .............................................................................. 12

*U.S. v. Capital Tax Corp.,*
 2007 WL 488084 (N.D. Ill. Feb.8, 2007) ..................................................................... 12

*U.S. v. Conservation Chemical Co.,*
 523 F. Supp. 125 (W.D. Mo) ........................................................................................ 14

*U.S. v. Stringfellow,*
 No. CV-83-2501-MML, 1984 WL 3206 (C.D. Cal. Apr. 5, 1984) .............................. 14

*U.S. v. Valentine,*
 856 F. Supp. 621 (D. Wyo. 1994) ............................................................................. 8, 12

*Unification Church v. Attorney General,*
 581 F.2d 870 (D.C. Cir.), *cert. denied,* 439 U.S. 828 (1978) ...................................... 12

*Unification Church v. INS,*
 547 F.Supp. 623 (D.C. 1982) ........................................................................................ 12

*Woods v. Federal Home Loan Bank Bd.,*
 826 F.2d 1400 (5th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988) ............................. 13

*WWBITZ, Inc. v. Village of Rouses Point,*
 589 F.3d 46 (2d Cir. 2009) ........................................................................................... 10

*Zotos Int'l, Inc. v. Kennedy,*
 460 F. Supp. 268 (D. D.C. 1978) .................................................................................. 12

## FEDERAL STATUTES

42 U.S.C. § 300i(b) .......................................................................................................... 6

42 U.S.C. § 300j-7(a) ....................................................................................................... 3

42 U.S.C. § 7413(b) .......................................................................................................... 9

42 U.S.C. § 7603 .............................................................................................................. 8

42 U.S.C. § 7607(b) .......................................................................................................... 9

<u>STATE RULES</u>

Rule 12(b) ..........................................................................................................................7, 15

TO THE HONORABLE ROYAL FURGESON, UNITED STATES DISTRICT JUDGE:

Defendants, Range Production Company and Range Resources Corporation (collectively, "Range"), file this Reply to the United States' Memorandum in Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction Or, In The Alternative, Motion to Dismiss for Failure to State a Claim ("Response").  Range will refer to Plaintiff as "EPA" or the "Agency."

## INTRODUCTION

EPA's struggle to make sense of its legal position is painfully obvious.  EPA says its Order imposes new legal obligations on Range, but then says that Range is not entitled to due process because it has not been deprived of any protected interest.  EPA claims the Order is final – the consummation, and definitive statement, of the Agency's decision-making process – but EPA's claim is belied by its Order and its own argument.  Specifically, even if Range had fully complied with the Order, EPA would have been required, by the very terms of the Order, to continue to make decisions before reaching definitive conclusions regarding such important issues as endangerment, liability and remedy.[1]  Accordingly, the Order merely represents EPA's tentative suspicions and speculation, and does not address any of these issues which would necessarily be part of the EPA's decision-making process.

Because it cannot prove that Range violated any law or caused the alleged contamination of the water wells, EPA argues that its "special authority"[2] under SDWA Section 1431 allows it, based on any "information" and without any notice and hearing, to issue and obtain enforcement of an order requiring Range to engage in extensive and expensive testing over the entire Trinity aquifer (comprising twenty Texas counties) without ever having to prove that an imminent and substantial endangerment may exist, that Section 1431 otherwise applies, or that Range did

---

[1] Per the Order and the statement made by EPA's designated representative, Mr. Blevins, EPA would still have had to approve testing plans and determine whether gas flow pathways exist, whether remediation is needed, who is to perform such remediation, and how and when remediation is to be performed. Order, ¶ 50(D-F); App. 87-88; Supp. App. 109-110.
[2] See Response, p. 1.

anything wrong or had anything to do with the alleged contamination. EPA even takes the position that this Court must issue a mandatory injunction requiring Range to comply with the Order based on nothing more than proof that Range failed to comply. EPA's cavalier argument that Congress intended to co-opt this Court's judicial function and transfer it to the whims of Agency employees, while relegating the Court to a function of rubber-stamping the decisions made by the Agency in secret and based on cherry-picked "information," finds no support in the law.

## FACTUAL BACKGROUND

The *only* conceivable connection between Range and the alleged endangerment addressed in the Order is EPA's seemingly unequivocal contention that Range caused or contributed to the alleged endangerment. On the face of the Order, EPA states that "Respondents caused or contributed to the endangerment identified herein." Order, ¶ 46. In media statements issued just after the Order, EPA's Regional Director boldly claimed that the Agency's scientists and engineers had established that Range had caused the contamination giving rise to the alleged endangerment.

Although EPA gave notice of the Order to several environmental activists and alerted them to the upcoming media statements, the Agency gave no prior notice to Range and did not afford Range any hearing prior to issuing the Order. Almost immediately after the Order was issued, Range began to send EPA evidence proving that its analysis was flawed and incomplete and that, in fact, Range had not caused or contributed to the alleged contamination. Following the January 19-20 hearing before the Railroad Commission of Texas ("RRC"), Range sent EPA copies of the evidence admitted at that hearing, including expert testimony, conclusively establishing that Range did not cause or contribute to such contamination.

Since EPA issued its Order on December 7, 2010, the falsity of its definitive "caused or contributed" contention has become increasingly apparent.   On January 25, 2011, Mr. John Blevins, the EPA official who signed the Order gave a court-ordered deposition in connection with the RRC proceedings.   In that deposition, Mr. Blevins sought to qualify the Agency's definitive "caused or contributed to" conclusion.   Conceding that water wells in the area had experienced natural gas contamination for years before the drilling of Range's gas wells and that EPA did not have sufficient information to make a definitive "caused or contributed to" determination, Mr. Blevins testified that EPA has concluded only that Range *may* have caused or contributed to gas in one of the two private water wells discussed in the Order. (App. 71-72; 87-88).

Notwithstanding that EPA has changed its mind on the cornerstone conclusion in Paragraph 46, EPA argues that the Order was a final agency action that is subject *only* to circuit-level judicial review on an arbitrary and capricious standard and that such review must be based *only* on the administrative record, which is limited to the sparse and flawed documents that EPA claims supported issuance of the Order on December 7, 2010.   With regard to this enforcement action, EPA claims that it need only prove one element:  that Range failed to comply with EPA's unilateral and unadjudicated Order.  Resp., p. 2.

## REPLY TO GOVERNMENT'S ARGUMENTS

## I.    THE EPA ORDER IS NOT A FINAL AGENCY ACTION AND, THUS, IS NOT SUBJECT TO REVIEW IN THE FIFTH CIRCUIT OR RIPE FOR ENFORCEMENT

EPA's contention that the Order meets both prongs of the *Bennett* test, and thus constitutes a final agency action, is without merit.[3]

---

[3] EPA also contends that Congress specifically intended for Section 1431 orders to be subject to judicial review in the circuit courts.  Resp., p. 8.  In fact, however, Section 1448 makes no mention of Section 1431 orders.  Rather, Section 1448 generically provides for circuit-level judicial review of any "final action" of the EPA Administrator. 42 U.S.C. § 300j-7(a).

**A.     The Order Is Tentative and Interlocutory, and It Does Not Mark the Consummation of the Agency's Decisionmaking Process**

Under the first prong of the *Bennett* test, an agency "action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." 520 U.S. 154, 177-78 (1997). Thus, courts consider whether or not the action constitutes the agency's definitive statement on the subject matter addressed. *Darby v. Cisneros*, 509 U.S. 137, 144 (1993); *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999); *Aeromar, C. Por A. v. Dep't of Transp.*, 767 F.2d 1491, 1493 (11th Cir. 1985).

The Order reflects tentative, interlocutory determinations regarding at least three core issues: endangerment, liability and remedy. First, under Section 1431, issuance of the Order merely reflects the Agency's determination that it has **received information** that there is a possible endangerment and local inaction. Second, according to Blevins, the Order likewise represents a tentative determination regarding liability for such possible endangerment: "[I]f you read the order itself, we don't use the word conclusive.... We **believe** there is a link between" the presence of natural gas in one of the domestic wells and Range's gas development and production activities. (App. 72 (61)) (emphasis added); *see also* Order ¶ 27 (emphasis added). Indeed, Blevins testified that "EPA's position is we haven't made a certain determination." (App. 90 (268); App. 92 (274) ("We did not make a definitive conclusion.")). He admitted that the Agency has more work to do to "**get to a point of determining conclusively**" the source of the gas. (App. 72) (emphasis added). Thus, he testified that EPA's current position regarding liability is: "[W]e **believe** Range has – **may** have caused or contributed. **That's the basis for the**

*issuance of our order.*"[4]  (App. 88 (228)) (emphasis added).

Third, the Order represents only an interlocutory step in EPA's decisionmaking process regarding an appropriate remedy.  EPA takes the position that the Order does not compel Range to remediate the aquifer, but only to submit plans.  This alone evidences that the Order is not a final or definitive statement of the Agency's position.  Under Paragraph 50(D-F) of the Order, Range's plans must be submitted for EPA approval, EPA has the right to modify the plans and require Range to implement the modifications, and EPA retains the right to modify the Order.

The tentative nature of the decisions reflected by the Order as to all of the core issues— endangerment, liability and remedy—precludes finality.  *See FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980) (holding that agency's averment of "reason to believe" that respondent was violating the law was not a definitive statement of position for purposes of finality); *Am. Airlines*, 176 F.3d at 289 (holding that agency decision failed to satisfy the first prong of the *Bennett* test where the agency had not made a final determination on the issues "at the heart" of the controversy – whether the respondent had violated the law and whether the respondent was liable).  Nevertheless, EPA asserts that the Order satisfies the first *Bennett* prong for two reasons.  First, EPA claims that the Order is final simply because it says so. Resp., p. 10.  The Agency's own characterization of its action, however, is not determinative.  *Pennzoil Co. v. FERC*, 645 F.2d 394, 399 (5th Cir.1981).   Rather, courts determine finality based upon "a realistic assessment of the nature and effect of the order."  *Fidelity Television, Inc. v. FCC*, 502 F.2d 443, 448 (D.C. Cir. 1974); *see also Shea v. Office of Thrift Supervision*, 934 F.2d 41, 44 (3d

---

[4] The Response makes it clear that EPA believed it was significant that Domestic Well 1 did not show signs of contamination until after Range drilled the gas wells. Resp., p. 3. EPA's argument raises the *post hoc ergo propter hoc* fallacy, that is, finding an earlier event caused a later event merely because it occurred first. The Fifth Circuit has long rejected that type of thinking as being any evidence of causation. *See, e.g., Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1892 (2010); *Tampa Times Co. v. NLRB*, 193 F.2d 582, 583 (5th Cir. 1952) (holding that *post hoc ergo propter hoc* "is not sound logic"). As a matter of law, correlation is not causation. *Huss*, 571 F.3d at 459; *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). Instead, correlation only raises suspicion, and suspicion is not competent, legally sufficient evidence. *Huss*, 571 F.3d at 459; *Jelinek*, 328 S.W.3d at 533.

Cir.1991).  Second, EPA argues that the Order is final because EPA referred the Order to the Department of Justice for enforcement through court action.  The Fifth Circuit, however, has held that an agency's decision to pursue an enforcement action does *not* transform an otherwise non-final administrative action into a final one.  *Dow Chemical v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987).

### B.    The Order Is Not Determinative of Range's Rights or Obligations

Under the second prong of *Bennett*, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78 (internal quotation marks and citations omitted).  An agency order is not final unless the order *itself* imposes a legal obligation as a consummation of the administrative process.  *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948).  The order must have a "*direct and immediate*" effect on the subject party and immediate compliance with its terms must be expected.  *Standard Oil*, 449 U.S. at 241 (emphasis added); *Franklin v. Massachusetts*, 505 U.S. at 797.

EPA argues that the Order imposed new legal requirements on Range by making it legally obligated to comply with the Order – *i.e.*, provide alternative water supplies, install monitoring equipment, perform water and soil testing, conduct a study of an aquifer that spans twenty counties in order to identify all pathways for gas flow, and develop a plan to remediate the aquifer.  In other words, according to EPA, the Order *itself* made Range legally responsible for addressing the alleged endangerment.  This argument is without merit.

A unilateral administrative order under Section 1431 is not self-executing; a respondent cannot be compelled to comply with such an order except by a district court in a civil action commenced by the government.  *See* 42 U.S.C. § 300i(b).  As a result, a Section 1431 order *itself* imposes no legal obligation, nor does it have a *direct and immediate* effect on the subject party.

*See, e.g., Sackett v. EPA.*, 622 F.3d 1139, 1143 (9th Cir. 2010), *pet. for cert. filed*, 79 USLW

3514 (Feb. 23, 2011) ("[N]o sanctions can be imposed, or injunctions issued, for noncompliance

with a compliance order until the EPA brings a civil enforcement action in district court."); 

*Territorial Court v. EPA*, No. 01-3670, 54 Fed. Appx. 339, 341 (3rd Cir. Oct 07, 2002) (holding

that "Final Administrative Order" issued by EPA under SDWA had "no effect" on respondent

unless and until it was enforced in subsequent enforcement proceedings).[5]  Further, EPA's

reliance on *Alaska Department. of Environmental Conservation v. EPA*, 244 F.3d 748 (9th

Cir.2001), *aff'd* 540 U.S. 461 (2004), is misplaced because it is factually distinguishable.  That

case dealt with an EPA enforcement order that effectively invalidated a mining company's air

quality construction permit.  *Id.* at 749.  The Ninth Circuit held that the order was final because it

had the effect of actually halting construction, at a considerable cost to the company.  *Id.* at 750.

The Order in this case had no effect on Range's production operations.[6]

    EPA also relies on the fact that the Order is an "emergency order" issued pursuant to an

"imminent and substantial endangerment" statute, rather than a mere compliance order.[7]  Resp.,

p. 11.  Courts, however, consistently hold that EPA's authority to issue emergency orders with

regard to imminent and substantial endangerments does ***not*** include the authority to determine

whether or not a person is ***liable*** for such endangerment.  *See, e.g., Kelley v. EPA*, 15 F.3d 1100,

1106-08 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995); *Redwing Carriers, Inc. v.

Saraland Apartments*, 94 F.3d 1489, 1507 n. 24 (11th Cir. 1996).  Rather, the district court must

---

[5] *See also Hannah v. Larche*, 363 U.S. 420, 441, 452 (1960) (agency did not adjudicate because it "cannot take any affirmative action which will affect an individual's legal rights;" it can only "find facts which may subsequently be used as the basis for legislative or executive action"); *Int'l Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 443-44 (1975) (agency investigatory proceeding, despite formal evidentiary hearing, is not an adjudication because resulting decision, "standing alone, binds no one").

[6] As noted on page 14 of the Rule 12(b) motions, the Supreme Court in *Alaska Department of Environmental Conservation* did hold, contrary to EPA's position in the instant case, that EPA's burden of proof in an enforcement action is the same as if it had initially filed suit without issuing the unilateral order. 540 U.S. at 493-94.

[7] EPA's claim that Range's argument of non-finality would mean that "a drinking water supply could continue to show elevated levels of contamination and an entire … aquifer could be endangered," ignores the fact that, under Section 1431, EPA can seek a temporary restraining order or injunctive relief (which would afford due process).

determine all issues related to liability for an alleged endangerment in a subsequent enforcement action in which EPA bears the burden of proof. *See, e.g., Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 660 (7th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996); *Raytheon Aircraft Co. v. U.S.*, 501 F.Supp.2d 1323, 1329 n.4 (D. Kan. 2007); *U.S. v. Valentine*, 856 F. Supp. 621, 624 n.1 (D. Wyo. 1994). Thus, the Order itself did not and cannot impose any legal liabilities or obligations on Range.

Contrary to EPA's argument, the finality principles set forth above are based on decades of authority from the Supreme Court and appellate and district courts throughout the country, and not just *Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236 (11th Cir. 2003) (hereinafter, "*TVA*"). By following these established finality principles, this Court need not even reach the constitutional issues addressed by the Eleventh Circuit in its well-reasoned *TVA* opinion.[8]

## II.   IF THE EPA ORDER WERE A FINAL AGENCY ACTION THAT IMPOSED NEW LEGAL OBLIGATIONS ON RANGE, IT WOULD DEPRIVE RANGE OF PROTECTED PROPERTY INTERESTS

EPA criticizes Range for failing to allege that the Order deprived it of a protected property right. Resp., p. 13. But Range is simply being consistent. Range's position is that the Order is not final because, among other reasons, the Order itself imposed no penalties or other liabilities against Range and that those liabilities may only be imposed by this Court if EPA pleads and proves the essential elements of its claim against Range, including that Range caused or contributed to the contamination. It logically follows that Range has not been deprived of a protected property right for purposes of due process – such a deprivation may only happen after a trial in this Court. Such trial will provide the due process guaranteed by the Constitution.

---

[8] EPA criticizes *TVA* as being "wrongly decided," but then attempts to rely on dicta in that case to support its contention that emergency orders under "imminent and substantial endangerment" statutes may impose new legal obligations. Resp., p. 12. Of course, no such order was at issue in *TVA*, and the court expressly declined to address whether it would be constitutional for such an order to impose new legal obligations. *TVA*, 336 F.3d at 1258 n.38. At any rate, EPA's attempt to rely on the emergency order provision of the Clean Air Act is unpersuasive. That emergency order statute imposes "rigorous requirements" on EPA that are not found in Section 1431. *Id.* at 1249; *see* 42 U.S.C. § 7603. Section 1431 is actually like the compliance order statutes at issue in *TVA* and *Sackett* because it authorizes issuance of agency orders on a strictly unilateral basis.

Unlike Range, EPA's arguments are internally inconsistent and contradictory. For purposes of its finality argument, the Agency contends that the Order itself legally obligates Range to perform all of the services specified in the Order. EPA then flip-flops and claims, with respect to Range's due process argument, that the Order itself did not deprive Range of any protected property interest. Resp., pp. 13-14. EPA cannot have it both ways. If the Order is final, then it necessarily deprived Range of a protected interest and deprives Range of due process.[9] For this reason, due process demands that a hearing be afforded at some stage in the administrative proceedings *before* a final order becomes effective. *Opp Cotton Mills, Inc. v. Administrator*, 312 U.S. 126, 152-53 (1941).

## III. DUE PROCESS WOULD NOT BE SATISFIED IF THE EPA ORDER WERE A FINAL AGENCY ACTION

If the Order were a final agency action that imposed liability against and new requirements on Range, obligating it to address the alleged endangerment by performing the services specified therein, then Range's due process rights would have been violated.[10]

---

[9] EPA's "Range could have sought a stay" argument is a red herring. EPA claims that Range somehow "waived" its due process rights by *timely* filing its Fifth Circuit petition for review. In any event, EPA's argument is disingenuous because, had Range sought a stay either from the court of appeals or this Court, EPA's position would have been the same as it is now – that EPA is not required to prove its case. Moreover, Range could not have attempted to prove the elements required for a stay, and thus could not have sought a stay until it received the certified administrative record from EPA, which did not occur until January 20, 2011. (Supp. App. 111-115). Finally, since the Order had no effect on Range's daily operations, it is unclear (and EPA does not articulate) on what grounds Range would have been able to obtain a stay of the Order.

[10] EPA attempts to distinguish *TVA* because the Clean Air Act provides for criminal penalties and Section 1431 does not. EPA talks about the lack of criminal penalties several times. Resp., pp. 7-9. EPA ignores the fact that the Order repeatedly threatens Range with criminal penalties. Order, ¶¶ 57, 61, 64. This also shows that the Order is not final because EPA's use of Section 1431 was merely tentative and EPA may later decide to seek relief under another statute. EPA also contends that *TVA* is distinguishable because more process is available to the recipient of a Section 1431 order than to the recipient of a CAA compliance order. Specifically, EPA points out that it must bring an enforcement action to recover penalties under Section 1431 and that final agency actions are subject to circuit-level judicial review under Section 1448. Resp., pp. 19-20. In fact, however, such procedures are equally available under the CAA. *See* 42 U.S.C. § 7413(b) (providing for district court action to enforce an EPA compliance order); *id.* § 7413(d) (providing for administrative proceeding under the APA, including opportunity for discovery and a hearing on the record, followed by a district court action to enforce an EPA compliance order); 42 U.S.C. § 7607(b) (providing for circuit-level judicial review of any "final action taken" by the EPA Administrator).

### A.   Due Process Would Require Notice and an Opportunity For a Meaningful Hearing Prior To Issuance of the Order

Ordinarily, due process requires notice and an opportunity for a hearing prior to government deprivation of a significant property interest. *Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). Postponement of the hearing may be permitted in genuine emergencies—*i.e.*, in extraordinary circumstances where *a pre-deprivation hearing is not feasible because swift action is necessary* to protect the public. *Hodel*, 452 U.S. at 300-1; *WWBITZ, Inc. v. Village of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009). Thus, this exception has been applied where the government summarily shuts down a mine that was operating in violation of the law and creating an "immediate danger" to public health and safety [*Hodel*, 452 U.S. at 298], or where the government takes emergency action to demolish the unstable remains of a building that had been badly damaged in a fire and that threatened to fall into the street [*WWBITZ*, 589 F.3d at 47-48].

In stark contrast, EPA ordered Range to perform water and soil sampling and analyses, conduct a study of an aquifer that spans twenty counties to identify all pathways for gas flow, and develop a plan to remediate the aquifer, none of which does anything to protect against immediate danger.[11] *Grace v. EPA*, 261 F.3d 330, 340 n.3 (3d Cir. 2001) (explaining that "there exists substantial support for the view that" EPA lacks authority to order long-term remediation of an aquifer under Section 1431 when other measures are "sufficient to abate the immediate threat to the public"). Mr. Lipsky complained to the EPA nine months ago, in August 2010. EPA waited until December 2010 to issue its Order and then waited several more weeks before filing this enforcement action. At no time has EPA made any effort to request pre-trial

---

[11] Notwithstanding that Mr. Blevins admits EPA is uncertain as to whether Range caused or contributed to any endangerment, EPA also ordered Range to provide alternative water supplies to two homes and install explosivity monitors in those homes. Range willingly undertook those actions for a period of time because the Texas Railroad Commission requested Range to do so. (App. 26). Thus, in its Complaint, EPA seeks compliance with the remaining provisions of the Order.

injunctive relief. For three-quarters of a year, EPA has done nothing to protect anybody, but still claims the existence of an emergency to attempt to justify the denial of a meaningful hearing.

> **B.  Even If Postponement of the Hearing Were Justified, Due Process Would Still Require a Fair and Meaningful Post-Deprivation Hearing**

Even genuine emergencies do not justify the ***denial*** of a fair and meaningful hearing, but rather only its ***postponement***. In other words, the Constitution still requires a prompt and meaningful post-deprivation hearing before a neutral decision-maker. *Boddie*, 401 U.S. at 379; *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 164-165 (1963) ("The imperative necessity for safeguarding these rights to procedural due process under the gravest of emergencies has existed throughout our constitutional history, for it is then, under the pressing exigencies of crisis, that there is the greatest temptation to dispense with fundamental constitutional guarantees which, it is feared, will inhibit governmental action.").

> **1.  Circuit-Level Judicial Review Under the Arbitrary and Capricious Standard Does Not Satisfy Due Process**

EPA argues that Range's fundamental right to a fair and meaningful hearing is satisfied by the opportunity for circuit-level judicial review of the Order on the administrative record under an arbitrary and capricious standard. The availability of post-hoc judicial review under a deferential "arbitrary and capricious" standard, however, cannot cure the failure to provide a fair hearing, on a proper record, with Range permitted to present evidence, before a neutral decision-maker, with the government bearing the burden of proof. The Supreme Court has explained that "even appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator" at the initial fact-finding or "trial" stage. *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 618 (1993); *see also Philip Morris Inc. v. Reilly*, 113 F. Supp.2d 129, 148 (D. Mass. 2000) ("The availability of judicial review after the fact does not make up for the lack of an opportunity to be heard in a manner that may influence the

administrative determination before it becomes final...."), *aff'd*, 312 F.3d 24 (1st Cir. 2002) (en banc);[12] *Zotos Int'l, Inc. v. Kennedy*, 460 F. Supp. 268, 278-79 (D. D.C. 1978) (judicial review to determine whether a final administrative decision was arbitrary and capricious "in no way substitutes for adequate notice and an opportunity to participate before administrative action becomes final.").

In contending that judicial review of the unilateral Order under an arbitrary and capricious standard is a constitutionally-appropriate substitute for Range's fundamental right to a fair and meaningful evidentiary hearing, EPA relies upon *Unification Church v. Attorney General*, 581 F.2d 870 (D.C. Cir.), *cert. denied*, 439 U.S. 828 (1978). That case, however, follows "an unbroken line of Supreme Court cases which has for nearly a century recognized a virtually unlimited power in the political branches of government to make rules for the admission and exclusion of aliens, ***even such as might be constitutionally repugnant if applied to U.S. citizens.***" *Unification Church v. INS*, 547 F.Supp. 623, 628 (D.C. 1982) (emphasis added) (citing *Knauff v. Shaughnessy*, 338 U.S. 537, 542-44 (1950); *Galvan v. Press*, 347 U.S. 522, 530-532 (1954); *Fiallo v. Bell*, 430 U.S. 787, 792-94 (1977)). Specifically, the case involved the Immigration and Naturalization Service's denial of an alien's request to extend her stay as a visitor. 581 F.2d at 875. The D.C. Court of Appeals held that because the granting or denial of such a request is "a political decision committed to executive discretion," due process requires no hearing and is satisfied by judicial review of the agency's decision to determine if it was arbitrary or capricious. *Id.* at 878-79. *Unification Church* simply is inapposite to this case.

---

[12] EPA attempts to distinguish several cases cited in Range's Motion to Dismiss on the ground that the statutory schemes at issue in those cases do not provide for circuit-level judicial review of EPA's orders. Resp., at 21. In holding such schemes to be constitutional, however, courts have emphasized that the agency orders, in and of themselves, impose no penalties or legal obligations, but rather may only be enforced in a district court action in which EPA has the burden of proving that the respondent is actually liable under the statute. *E.g.*, *Sackett v. EPA*, 622 F.3d 1139, 1145-46 (9th Cir. 2010); *Raytheon Aircraft Co. v. U.S.*, 501 F.Supp.2d 1323, 1329 & n.4 (D. Kan. 2007); *U.S. Steel Corp. v. Fri*, 364 F.Supp. 1013, 1021 (N.D. Ind. 1973); *U.S. v. Capital Tax Corp.*, 2007 WL 488084, at *3 (N.D. Ill. Feb.8, 2007) (unpublished opinion); *see also U.S. v. Valentine*, 856 F. Supp. 621, 627 (D. Wyo. 1994).

EPA also relies upon *Woods v. Federal Home Loan Bank Bd.*, 826 F.2d 1400 (5th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988), in which the Fifth Circuit reviewed an agency's decision to appoint a receiver for a failed bank. The court, however, did ***not*** hold that the bank lacked a constitutional right to notice and an opportunity for an evidentiary hearing. To the contrary, the court emphasized at length that the bank had received "persistent" notice and "numerous" opportunities to meaningfully participate in the administrative decision-making process, including "the opportunity to request a formal administrative hearing," which it waived. *Id.* at 1413 (emphasis added). In contrast, EPA issued the Order in this case on a unilateral basis with no notice to Range. As a result, Range had ***no opportunity*** to participate in the Agency decisionmaking process, to rebut EPA's contentions, or to offer any evidence into the administrative record on which judicial review will be based.

> **2.     This Enforcement Action, as Envisioned by EPA, Would Not Satisfy Due Process**

EPA also contends that due process is satisfied by this enforcement action. However, EPA asserts that, to prevail in this action, it need only prove one element: that Range failed to comply with EPA's unilateral and unadjudicated Order. Resp., p. 2. While conceding that this Court has discretion with regard to imposing penalties against Range, EPA claims that this Court must issue a mandatory injunction requiring Range to comply with the Order based only upon the fact that it was issued. As a matter of law, due process is not satisfied by an enforcement action in which the defendant's liability is conclusively presumed, based solely on a unilateral agency order produced in secret on the basis of the agency's mere receipt of information that there may be an endangerment and its belief that the respondent may have caused or contributed

to such endangerment.[13]

## IV.   EPA HAS FAILED TO STATE A CLAIM

The only conceivable connection between Range and the alleged endangerment is EPA's unsubstantiated and admittedly tentative conclusion that Range caused or contributed to such endangerment.   EPA made that contention, not only to the media, but also on the face of the Order.   Now, faced with conclusive evidence to the contrary (provided by Range, but not made a part of the administrative record), EPA claims that does not have to prove that contention.   None of the legal authority cited by EPA supports the proposition that a federal agency may impose *ad hoc* legal obligations on an otherwise unregulated private party to address an alleged endangerment without ever having to prove that the party caused or contributed to the alleged endangerment.   Indeed, the very legislative history cited by EPA infers congressional intent to require causation by stating that EPA may issue Section 1431 orders "to any person ***whose action or inaction*** requires prompt regulation to protect the public health."   Resp. p. 8 (quoting H.R. Rep. No. 93-1185, at 33) (emphasis added).[14]

"The most liberal interpretation of the rules of pleading require, as an absolute minimum, that the pleading allege a violation of some applicable law or duty."   *U.S. v. Conservation Chemical Co.*, 523 F. Supp. 125, 127 (W.D. Mo).   EPA's contention that Section 1431 allows the imposition of civil penalties and injunctive relief without proof (either at the agency level or

---

[13] EPA attempts to distinguish *Sackett* on the ground that the Fourth Circuit there held that Section 1319(d) of the Clean Water Act "does not authorize enforcement actions for violations of administrative compliance orders." Response, at 22 (citing *Sackett*, 622 F.3d at 1145).   In fact, however, the court held that, ***to avoid a due process violation***, the statute must be interpreted as precluding the assessment of penalties "for violations of a compliance order under § 1319(d) ***unless*** the EPA also proves, by a preponderance of the evidence, that the defendants actually violated the CWA in the manner alleged." 622 F.3d at 1145 (emphasis added).

[14] The two cases cited by EPA likewise provide no support for EPA's contention that it never has to prove that Range actually caused or contributed to the alleged endangerment.   In *Grace v. EPA*, 261 F.3d 330 (3d Cir. 2001), it was undisputed that the respondent had caused or contributed to the presence of ammonia in the aquifer at issue. *Id.* at 333.   In *U.S. v. Stringfellow*, No. CV-83-2501-MML, 1984 WL 3206 (C.D. Cal. Apr. 5, 1984), the court explained that a generator of hazardous waste "might" be liable for having "contributed" to contamination resulting from improper disposal *if* the generator knew about the illegal disposal or was negligent in selecting or instructing the person who conducted the disposal. *Id.* at *6.   In this case, however, EPA makes no allegations of negligence on the part of Range.

in court) that the party did anything wrong or has any causal nexus to the alleged contamination is contrary to congressional intent and common sense. As set forth in the Rule 12(b) motions, even assuming the Order is final and ripe for enforcement, EPA has failed to plead a valid theory of liability, and the Complaint should be dismissed for failure to state a claim.

WHEREFORE, PREMISES CONSIDERED, Range Production Company and Range Resources Corporation request that the Complaint be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim, and for such other and further relief to which they may justly be entitled.

Respectfully submitted,

David P. Poole, General Counsel
State Bar No. 16123750
Range Production Company
100 Throckmorton St., Suite 1200
Fort Worth, Texas  76102
Tel. 817.869.4254
dpoole@rangeresources.com

HARRIS, FINLEY & BOGLE, P.C.
Andrew D. Sims
State Bar. No. 18415600
Russell R. Barton
State Bar. No. 01857250
777 Main Street, Suite 3600
Fort Worth, Texas  76102
Tel. 817.870.8700
Fax 817.332.6121
Asims@hfblaw.com
Rbarton@hfblaw.com

KELLY HART & HALLMAN LLP
Dee J. Kelly
State Bar No. 11217000
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Tel. 817.332.2500
Fax 817.878.9280
dee.kelly@kellyhart.com

KELLY HART & HALLMAN LLP
301 Congress Avenue, Suite 2000
Austin, Texas  78701
Tel. 512. 495.6400
Fax 512.495.6401

By:   */s/ J. Stephen Ravel*
      J. Stephen Ravel
      State Bar No. 16584975
      steve.ravel@kellyhart.com
      Diana L. Nichols
      State Bar No. 00784682
      diana.nichols@kellyhart.com

**Attorneys for Range Resources Corporation
and Range Production Company**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and complete copy of the forgoing document was served as indicated below on this the 23rd day of May 2011, as follows:

**Via E-Mail: katherine.mcgovern@usdoj.gov
& U.S. First Class Mail**
Katherine S. McGovern
Assistant United States Attorney
1100 Commerce Street, Suite 300
Dallas, Texas  75242

**Via E-Mail:  lynette.wilson@usdoj.gov
& U.S. First Class Mail**
Lynette S. Wilson
U.S. Attorney's Office
1100 Commerce St., Suite 300
Dallas, Texas 75242

**Via E-Mail:  henson.tucker@epamail.epa.gov
& U.S. First Class Mail**
Tucker Henson
U.S. EPA Region VI
Office of Regional Counsel (6RC-EW)
1445 Ross Avenue, Suite 1200
Dallas, Texas  75202

**Via E-Mail:  bradley.levine@usdoj.gov
& U.S. First Class Mail**
Bradley L. Levine
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

**Via E-Mail:  keith.tashima@usdoj.gov
& U.S. First Class Mail**
Keith T. Tashima
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, DC 20044-7611

*/s/ J. Stephen Ravel*
J. Stephen Ravel